UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BERKLEY INSURANCE COMPANY      :      CIVIL ACTION NO. 1:21-cv-10873
                                                    :
v.                                                  :
                                                    :
TODRIN LAW, LLC, SASSOON &          :
CYMROT, LLP and AARON S. TODRIN   :

## COMPLAINT FOR DECLARATORY RELIEF

NOW COMES the Plaintiff, Berkley Insurance Company, and for its Complaint against

Defendants Todrin Law, LLC, Sassoon & Cymrot, LLP and Aaron S. Todrin, seeks declaratory

relief pursuant to 28 U.S.C. § 2201, as follows:

## PARTIES

1.      Plaintiff, Berkley Insurance Company ("Berkley"), is a corporation organized

under the laws of Connecticut, with its principal place of business located at 475 Steamboat

Road, Floor 1, Greenwich, Connecticut.

2.      Defendant Todrin Law LLC ("Todrin Law") is a limited liability corporation

organized under the laws of Massachusetts, with its principal place of business located at 2702

West Allen Street, Allentown, Pennsylvania 18104.   Pursuant to Todrin Law's 2020 Annual

Report, filed with the Commonwealth of Massachusetts Secretary of the Commonwealth,

Corporations Division, the sole member/manager of Todrin Law is Aaron S. Todrin, who is a

citizen of Massachusetts.

3.      Defendant Sassoon & Cymrot, LLP ("Sassoon & Cymrot") is a limited liability

partnership organized under the laws of Massachusetts with its principal place of business

located at 84 State Street, 8th Floor, Boston, Massachusetts 02109.   Pursuant to Sassoon &

Cymrot's 2020 Annual Report, filed with the Commonwealth of Massachusetts Secretary of the

Commonwealth, Corporations Division, the two partners of Sassoon & Cymrot are Jeffrey J. Cymrot and Lewis A. Sassoon, who are both citizens of Massachusetts.

4.      Defendant Aaron S. Todrin ("Todrin") is a citizen of the United States domiciled in Massachusetts.  Pursuant to Second Wind Consultants, Inc.'s 2019 Annual Report, filed with the Commonwealth of Massachusetts Secretary of the Commonwealth, Corporations Division, Todrin was its President.  As noted in Paragraph 2, Todrin is also a  partner/member at Todrin Law.  Todrin was also formerly an associate attorney at Sassoon and Cymrot.

## JURISDICTION AND VENUE

5.      The jurisdiction of this Court is founded upon 28 U.S.C. § 1332, et seq., in that there is complete diversity of citizenship between the plaintiff and the defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 as all of the Defendants are subject to personal jurisdiction in Massachusetts because the insurance policy was issued in Massachusetts and all of the Defendants regularly do business in Massachusetts.

## NATURE OF ACTION

7.      Berkley is bringing this action to obtain a declaratory judgment pursuant to 28 U.S.C. § 2201 as an actual and justiciable controversy of a judicial nature exists between Berkley and the Defendants involving the rights and liabilities of the parties to the contracts of insurance described herein.

## FACTUAL ALLEGATIONS

### A.      The Underlying Action

8.      As set forth below, Berkley issued Lawyers Professional Liability Insurance Policies to Todrin Law and Sassoon & Cymrot (collectively, the "Berkley Policies"):

| The Berkley Policies | | |
|---|---|---|
| **Named Insured** | **Policy Number** | **Policy Period** |
| Todrin Law LLC | 1638915 (the "Todrin Law Policy")[1] | May 25, 2018 to May 25, 2019 *Prior Acts Date*: May 25, 2017 |
| Sassoon & Cymrot LLP | PLP-1531338-P3 (the "Sassoon & Cymrot Policy")[2] | October 1, 2018 to October 1, 2019 *Prior Acts Date*: October 1, 2002 |

9.      On or about November 30, 2018, third party MK III Co., LLC ("MK III") filed an eight-count Complaint in Massachusetts Superior Court (the "Underlying Complaint") captioned *MK III Co., LLC v. Aaron S. Todrin, et al.*, Suffolk Superior Court, Civil Action No. 18-3725 BLS (the "Underlying Action"). A copy of the Underlying Complaint is attached hereto as **Ex. C**. The Underlying Complaint asserts various causes of action against Todrin ("Todrin") and third parties James E. McGuire ("McGuire"), Steven W. Sanders ("Sanders"); TPC Hauling, LLC ("TPC"), Hotels Two, LLC ("Hotels Two"), Second Wind Consultants, Inc. and Second Wind Capital, LLC (collectively "Second Wind"), all arising out of a failed investment opportunity.

10.     Neither Todrin Law, nor Sassoon & Cymrot, are named as a party, or otherwise referenced, in the Underlying Complaint.

11.     The Underlying Complaint alleges that MK III is a single-member limited liability company controlled by Michael J. Kittredge, III ("Kittredge"). (**Ex. C**, ¶1).

12.     The Underlying Complaint further alleges that Kittredge and Todrin became acquaintances in 2008 and that, in late 2015, Todrin approached Kittredge with an investment opportunity, specifically a six-month bridge loan for $1.6 million (the "Deal" or "Loan"), whereby Kittredge/MK III, as the lender, would loan two out-of-state borrowers, McGuire and Sanders through their Illinois-registered single-purpose entity, Hotels Two, (collectively

---

[1]A complete copy of the Todrin Law Policy is attached hereto as **Ex. A**.
[2]A complete copy of the Sassoon & Cymrot Policy is attached hereto as **Ex. B**.

"Borrowers") $1.6 million for six months.  At the conclusion of the six-month term, a take-out lender would take out MK III's bridge loan.  (*Id*., ¶18).

13.     The Underlying Complaint further alleges that when pitching the Deal to Kittredge/MK III, Todrin failed to disclose that his father, Donald Todrin, and his associates at Second Wind, had previously made a loan to the Borrowers, which was subsequently defaulted upon and would now be repaid by using proceeds of the Loan from Kittredge/MK III.  (*Id*., ¶19).

14.     The Underlying Complaint further alleges that when pitching the Deal to Kittredge/MK III, Todrin falsely assured Kittredge that Donald Todrin (who Kittredge knew had previously been disbarred from the practice of law), had no involvement whatsoever in the Deal. (*Id*.).

15.     Instead, the Underlying Complaint alleges that Todrin explained that a portion of the Loan would be allocated toward paying off "senior creditors" to secure Kittredge's/MK III's status and security as "first position" lender and stressed the importance of becoming "first position" lender as advantageous to Kittredge/MK III without disclosing that his father and his associates at Second Wind would receive a portion of the Loan proceeds. (*Id*., ¶21).

16.     The Underlying Complaint further alleges that when pitching the Deal to Kittredge/MK III, Todrin represented that, upon closing of the Deal, a Promissory Note in the principal amount of $1.6 million was to be delivered by the Borrowers, interest was to be computed at 12% per annum and an additional lender's fee of $50,000 was to be collected upon closing.  (*Id*.).

17.     The Promissory Note was allegedly secured by a mortgage on parcels of property located in Nauvoo, Illinois allegedly managed by Sanders in his individual capacity.  ("Collateral Property").  (*Id*., ¶28-29).  Todrin allegedly represented that the Collateral Property was "very

steady security for a loan of this size" and provided documentation, and an appraisal purporting to support his descriptions of the bona fide nature of the Loan, the ability of the Borrowers to repay it, and the security provided by the Collateral Property.  (*Id*., ¶33).

18.     The Underlying Complaint further alleges that, based on the Deal terms, as presented by Todrin, Kittredge/MK III understood or believed that it would realize a significant profit upon the Loan being taken out after six months.  (*Id*., ¶45).

19.     The Underlying Complaint further alleges that the Deal's closing date was on or about December 30, 2015 ("Closing"), and when Loan matured six months from Closing, the Borrowers defaulted.  (*Id*., ¶¶46-47).

20.     Following the default, Todrin allegedly advised Kittredge/MK III not to pursue immediate foreclosure on the Collateral Property, but rather, to allow default interest to accrue under the terms of the Loan documents. (*Id*., ¶48).  Todrin allegedly provided this advice with knowledge and understanding that he, Todrin, would collect 10% of all accrued default interest pursuant to the terms of the Deal and/or his agreement with Kittredge.  (*Id*.).

21.     The Underlying Complaint further alleges that, in July 2016, Todrin negotiated with the Borrowers' counsel for forbearance payments of $4,000 to be made by the Borrowers each month, separate and in addition to the outstanding principal balance and alleges that the Borrowers, through their counsel, periodically made said payments to Todrin which remained in an unidentified IOLTA account or was applied to legal bills without authorization.  (*Id*., ¶¶49-51).

22.     The Underlying Complaint further alleges that Todrin continued to advise Kittredge/MKII to hold off on foreclosure proceedings into the year 2018 and, as of February

2018, the total amount owed to Kittredge/MK III on the Loan was allegedly $3.205 million, which included $1.255 million in interest alone.  (*Id.*, ¶¶52-53).

23.     On the basis of the above-referenced factual predicate, the Underlying Complaint asserts the following causes of action against Todrin[3]:  (1) Breach of Duty (Count I – Against Todrin); (2) Negligence (Count II – Against Todrin); (3) Fraud (Count III – Against Todrin and Second Wind); (4) Negligent Misrepresentation (Count IV – Against Todrin); (5) Civil Conspiracy (Count V - Against Todrin, Second Wind); (6) Violation of M.G.L. c. 93A, § 11 (Count VI – Against Todrin); and (7) Unjust Enrichment (Count VIII – Against all Defendants).

24.     The Underlying Complaint seeks money damages, including treble damages as to Count VI, plus interest, costs, attorneys' fees and unspecified equitable relief.

**B.    The Third Party Complaint**

25.     On or about January 31, 2019, Todrin filed a Third Party Complaint against Sassoon & Cymrot in connection with the Underlying Complaint.  A copy of the Third Party Complaint is attached hereto as **Ex. D**.

26.     The Third-Party Complaint alleges that from September 2012 to March 2017, Sassoon & Cymrot employed Todrin as an associate attorney.  (**Ex. D**, ¶3).  It further alleges that he was a W-2 employee and was covered under the firm's professional liability insurance policy.  (*Id.*).

27.     In addition, the Third-Party Complaint claims that in the fall of 2015, Kittredge engaged Sassoon & Cymrot to represent him in connection with various matters including certain loan transactions in which he was serving as a private lender through MK III.  (*Id.*, ¶ 5).

---

[3]The Complaint also asserts a count sounding in Breach of Contract (Count VII) against McGuire, Sanders, TPC Hauling and Hotels Two.

Included amongst those matters was the loan transaction involving Hotels Two, which is the subject of the Underlying Complaint. (*Id*., ¶ 6).

28.     The Third-Party Complaint alleges that in connection with the Hotels Two loan transaction, Todrin allegedly worked at the direction and under the supervision of Sassoon & Cymrot partner Mark Bressler ("Bressler"). (*Id*., ¶7).

29.     The Third-Party Complaint further alleges that the Hotels Two deal closed on December 30, 2015, and, when the note reached maturity in June 2016, Hotels Two defaulted on the loan. (*Id*., ¶¶8, 21).

30.     The Third Party Complaint further alleges that MK III then brought suit against Todrin in order to recover the damages it suffered as a result of Hotels Two's default on the loan. (*Id*., ¶22).

31.     The Third Party Complaint further alleges that Todrin denies liability of any kind to MK III but alleges that, in the event he is found liable, his liability would be based solely on actions, conduct and/or omissions made (1) in the course of his employment with Sassoon & Cymrot; (2) within the scope of the authority conferred upon him by Sassoon & Cymrot; and (3) under the supervision of senior attorneys, including Bressler. (*Id*., ¶¶ 23, 24).

32.     The Third Party Complaint further claims that Sassoon & Cymrot is therefore bound to indemnify, defend and hold Todrin harmless from any and all losses, damages, expenses and attorneys' fees and costs incident to the defense of MK III's action. (*Id*., ¶ 25).

33.     On the basis of the above-referenced factual predicate, the Third Party Complaint asserts the following causes of action against Sassoon & Cymrot[4]: (1) Indemnification/Exoneration and (2) Declaratory Judgment.

---

[4]The Third Party Complaint also asserts a claim against Kittredge with counts sounding in breach of contract and promissory estoppel/quantum merit/unjust enrichment.

34.     The Third Party Complaint seeks declaratory judgment, money damages, including pre- and post-judgment interest, attorneys' fees and other relief as the Court deems just and proper.

## C.     The Counterclaim

35.     On or about August 1, 2019, Sassoon & Cymrot filed a Counterclaim against Todrin in connection with the Underlying Complaint (the "Counterclaim").  A copy of the Counterclaim is attached hereto as **Ex. E**.

36.     Sassoon & Cymrot allegedly brought the Counterclaim based on the principle that an employee is liable to his employer for any loss resulting from the employee's negligence with respect to a third person.  (*Id*., p. 6).

37.     The Counterclaim alleges that MK III seeks to recover from Todrin damages that MK III allegedly suffered as the result of Todrin's involvement in the six month bridge loan to Hotels Two, which Hotels Two subsequently defaulted on, and notes that the Underlying Complaint does not name Sassoon & Cymrot as a defendant. (*Id*., ¶3).

38.     The Counterclaim further states that Todrin has brought claims for indemnification and declaratory judgment against Sassoon & Cymrot in the event that he is found liable to MK III.  (*Id*., ¶4).

39.     The Counterclaim denies that Sassoon & Cymrot is obligated to indemnify Todrin, but asserts that if it is held liable for indemnification to Todrin and/or vicariously liable to MK III for the conduct of Todrin, it is entitled to recover from Todrin for any losses that it suffers that was caused by him.  (*Id*., ¶5).

40.     The Counterclaim goes on to allege the following causes of action against Todrin: (1) Indemnification/Negligence (Count One); (2) Declaratory Judgment (Count Two); (3) Breach of Fiduciary Duty and Duty of Loyalty (Count Three); and (4) Civil Conspiracy (Count Four).

41.     On or about August 14, 2019, Todrin filed an Answer to the Counterclaim ("Answer to the Counterclaim").  A copy of the Answer to the Counterclaim is attached hereto as **Ex. F**.

42.     In the Answer to the Counterclaim, Todrin broadly denied the allegations against him, and asserted various affirmative defenses.

### D.     The Berkley Policies

43.     Each of the Berkley Policies' Insuring Agreement in Form LPL 39450 (10-14), p. 1 of 10, is amended by endorsement, Form LPL 101101-CW (rev. 04-17) to provide as follows:

> In consideration of the premium paid for this Policy, it is understood and agreed that:
>
> #### I. **A.     Lawyers Professional Liability Insurance Coverage**
>
> The Insurer agrees to pay on behalf of the Insured all sums in excess of the deductible, up to the Limit of Liability, that the Insured shall become legally obligated to pay as **Damages** and **Claim Expenses** because of a **Claim** that is both first made against the **Insured** and reported in writing to the **Insurer** during the **Policy Period**, or any Extended Reporting Period, if applicable, by reason of an act or omission in the performance of **Legal Services** by the **Insured** or by any person for whom the Insured is legally liable, while acting on behalf of the **Named Insured** and/or **Predecessor Firm** for clients of the **Named Insured** and/or **Predecessor Firm** provided that:
>
> 1.     no **Insured** gave notice to a **Prior Insurer** of such **Claim** or a **Related Claim**; and/or
>
> 2.     no **Insured** gave notice to a **Prior Insurer** of any such act or omission or **Related Act or Omission**; and/or
>
> 3.     prior to the inception date of the first policy if continuously renewed, or the date the **Insured** first became a member or employee of the **Named Insured** and/or **Predecessor Firm**,

whichever is later, no **Insured** had a basis to believe that any such act or omission, or **Related Act or Omission**, might reasonably be expected to be the basis of such **Claim**.

\*       \*       \*

44.     Each of the Berkley Policies' Insuring Agreement, Form LPL 39450 (10-14), p. 1 of 10, further states:

**B.     Defense**

The **Insurer** shall have the right and duty to defend, in the **Insured's** name and on the **Insured's** behalf, a **Claim** seeking **Damages** covered by this Policy even if any of the allegations of the **Claim** are groundless, false or fraudulent. The **Insurer** shall have the right to appoint counsel and to make such investigation and defense of a **Claim** as is deemed necessary by the **Insurer**. If a **Claim** shall be subject to arbitration or mediation, the **Insurer** shall be entitled to exercise all of the **Insured's** rights in the choice of arbitrators or mediators and in the conduct of an arbitration or mediation proceeding.

45.     The Todrin Law Policy includes a Prior Acts Date endorsement, Form LPL 101901 (05-14), which states:

In consideration of the premium paid for this Policy, it is understood and agreed that:

1.     Section I. Insuring Agreement A. Lawyers Professional Liability Insurance Coverage of this Policy is amended by the addition of the following:

I. **A.     Lawyers Professional Liability Insurance Coverage**

4.     the act or omission occurred on or after May 25, 2017.

46.     The Sassoon & Cymrot Policy includes a Prior Acts Date endorsement, Form LPL 101901 (05-14), which states:

In consideration of the premium paid for this Policy, it is understood and agreed that:

1.      Section I. Insuring Agreement A. Lawyers Professional Liability Insurance Coverage of this Policy is amended by the addition of the following:

### I. **A.**    **Lawyers Professional Liability Insurance Coverage**

    4.      the act or omission occurred on or after October 1, 2002.

47.     Each of the Berkley Policies also includes the following Definitions in Form LPL

39450 (10-14), p. 3 to 5 of 10:

### III.    **Definitions**

Whenever printed in boldface type, and whether in the singular or plural form in this Policy, the following terms shall have the meanings indicated below.

**B.**    **Claim** means a demand for money or services, including the service of suit or the institution of any alternative dispute resolution proceeding, received by the **Insured** arising out of an act or omission, including **Personal Injury**, in the rendering of, or failure to render **Legal Services**.

\*       \*       \*       \*

**D.**    **Damages** means judgments, awards and settlements (including pre-judgment interest), provided all settlements are negotiated with the assistance and approval of the **Insurer**. **Damages** also includes punitive and exemplary damages, and the multiple portions thereof, to the extent that such damages are insurable under the law of the most favorable applicable jurisdiction. **Damages** do not include:

    1.      legal fees, costs and expenses paid or incurred or charged by any Insured, no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing;

    2.      civil or criminal fines, sanctions, penalties or forfeitures, whether pursuant to law, statute, regulation or court rule, including but not limited to awards under 18 U.S.C. §1961, et. seq., Federal Rules of Civil Procedure 11 or 28 U.S.C. §1927 and state statutes, regulations, rules or law so providing, and injuries that are a consequence of any of the foregoing;

3. injunctive or declaratory relief; or

4. any amount for which an Insured is absolved from payment by reason of any covenant, agreement or court order.

\*   \*   \*   \*

F. **Insured** means the **Named Insured**, **Predecessor Firm** and the persons or entities described below:

1. any lawyer, partnership, professional corporation, professional association, limited liability company or limited liability partnership who is or becomes a partner, officer, director, stockholder-employee, associate, manager, member or employee of the **Named Insured** during the **Policy Period** shown in the Declarations;

\*   \*   \*   \*

H. **Legal Services** means:

1. those services, including pro bono services, performed by an **Insured** for others as a lawyer, arbitrator, mediator, title agent or other neutral fact finder or as a notary public. Any title agency or insurer, on whose behalf the **Insured** acts as title agent or designated issuing attorney, is not an **Insured** under this Policy unless such title agency is a wholly owned subsidiary of the **Named Insured;**

2. those services performed by an **Insured** as an administrator, conservator, receiver, executor, guardian, trustee or in any other fiduciary capacity;

\*   \*   \*   \*

For the purpose of this definition, services performed by an **Insured** in a lawyer-client relationship on behalf of one or more clients shall be deemed **Legal Services** in the **Insured's** capacity as a lawyer, although such services could be performed wholly or in part by non-lawyers.

\*   \*   \*   \*

J. **Personal Injury** means an injury arising out of: false arrest, detention, or imprisonment; wrongful entry, or eviction, or other invasion of the right of private occupancy; libel, slander, or other disparaging or defamatory materials; a writing or saying in

violation of an individual's right to privacy; malicious prosecution or abuse of process.

\* \* \* \*

**L.** **Predecessor Firm** means any sole proprietorship, partnership, professional corporation, professional association, limited liability corporation or limited liability partnership engaged in **Legal Services** and:

**1.** to whose financial assets and liabilities the firm listed as the **Named Insured** in the Declarations is the majority successor in interest; or

**2.** of which the **Named Insured** retained 50% or more of the lawyers; or

**3.** was previously deemed to be a **Predecessor Firm** under the lawyers professional liability policy issued by the **Insurer** immediately preceding this Policy.

**M.** **Prior Insurer** means an insurer, including the **Insurer** and any subsidiary or affiliate of the **Insurer,** who has issued a lawyers professional liability insurance policy that is applicable to a **Claim,** such policy having an inception date prior to the **Policy Period,**

**N.** **Related Acts or Omissions** means all acts or omissions in the rendering of **Legal Services** that are temporally, logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision.

**O.** **Related Claims** means all **Claims** arising out of a single act or omission or arising out of **Related Acts or Omissions** in the rendering of **Legal Services.**

48. Each of the Policies also include the following Exclusions, Form LPL 39450 (10-14), p. 5 to 6 of 10:

**IV.** **Exclusions**

This Policy does not apply:

**A.** **Intentional Acts**

to any **Claim** based on, or arising out of, or in any way involving any dishonest, fraudulent, criminal, malicious act or omission or intentional wrongdoing by an **Insured**; provided, however:

1. this exclusion shall not apply to **Personal Injury**;

2. the **Insurer** shall provide the **Insured** with a defense of such **Claim** unless or until the dishonest, fraudulent, criminal, malicious act or omission or intentional wrongdoing has been determined by any trial verdict, court ruling, regulatory ruling or legal admission, whether appealed or not. Such defense will not waive any of the **Insurer's** rights under this Policy. Criminal proceedings are not covered under this Policy regardless of the allegations made against any **Insured**;

3. this exclusion will not apply to any **Insured** who is not found to have personally committed the dishonest, fraudulent, criminal, malicious act or omission or intentional wrongdoing by any trial verdict, court ruling, or regulatory ruling.

\*       \*       \*       \*

**D.   Contractual Liability**

to any **Claim** based on, or arising out of, or in any way involving an **Insured's** alleged liability under any oral or written contract or agreement, unless such liability would have attached to any **Insured** in the absence of such agreement;

\*       \*       \*       \*

**E.   Insured v. Insured**

To any **Claim** by or on behalf of an **Insured** under this Policy against any other **Insured** hereunder; unless such **Claim** arises out of **Legal Service**s by an **Insured** rendered to such other **Insured** as a client;

**F.   Capacity as Director, Officer, Fiduciary**

to any **Claim** based on, or arising out of, or in any way involving an **Insured's** capacity as:

1. a former, existing or prospective officer, director, shareholder, partner, manager or member (or any equivalent position) of any entity if such entity is not named in the Declarations;

14

*       *       *       *

**H.   Owned Entity**

to any **Claim** based on, or arising out of, or in any way involving **Legal Services** performed, directly or indirectly, for any entity not named in the Declarations, if at the time of the act or omission giving rise to the Claim, the percentage of ownership interest, direct or indirect, in such entity by any **Insured**, or an accumulation of **Insureds**, exceeded 10%;

**I.   Funds Exclusion**

to any **Claim** based on, or arising out of, or in any way involving the actual or alleged conversion, misappropriation or improper commingling of client funds;

**J.   Securities Exclusion**

to any **Claim** based on, or arising out of, or in any way involving:

   1.   the promotion, sale or solicitation for sale of securities, real estate, or other investments by any **Insured**; or

   2.   recommendations, representations, or opinions concerning specific investment advice by any **Insured** or any person or organization referred to by any **Insured** or any person or organization referred to by any **Insured** in connection with portfolio or trust account management, or the performance or nonperformance of securities, real estate, or other investments;

**K.   Personal Profit Exclusion**

to any **Claim** based on, or arising out of, or in any way involving any **Insured** having gained any personal profit or advantage to which he or she was not legally entitled;

49.   Each of the Policies also includes the following Other Insurance provision in

Form LPL 39450 (10-14), p. 7 of 10:

**D.   Other Insurance**

Any **Claim** insured under any other insurance policy or risk transfer instrument which applies to a covered **Claim**, shall be paid first by those

instruments, policies or other arrangements. This Policy will not serve as primary insurance where there is other applicable insurance. It is the intent of this Policy to apply only to **Claim Expenses** and/or **Damages** which are more than the total limit of all deductibles, limits of liability, self-insured amounts or other valid and collectible insurance or risk transfer arrangements, whether primary, contributory, excess, contingent, or otherwise. This Policy will not contribute with any other applicable insurance.

## E.      The Insurance Claims and Dispute

50.     Todrin Law and Sassoon & Cymrot each forwarded the Underlying Complaint to Berkley and requested that Berkley defend and indemnify Todrin in the Underlying Action.

51.     Sassoon & Cymrot also forwarded the Third Party Complaint to Berkley and requested that Berkley defend and indemnify Sassoon & Cymrot in the Third Party Action.

52.     Todrin Law also provided the Counterclaim to Berkley.

53.     Berkley is currently providing a defense to Todrin in connection with the Underlying Complaint under the Berkley Policies subject to a full and complete reservation of rights.

54.     Berkley is also currently providing a defense to Todrin in connection with the Counterclaim under the Todrin Law Policy subject to a full and complete reservation of rights.

55.     Berkley is also currently providing a defense to Sassoon & Cymrot in connection with the Third Party Complaint under the Sassoon & Cymrot Policy subject to a full and complete reservation of rights.

### i.      Underlying Complaint

56.     Berkley asserts that it has no defense or indemnification obligations in connection with the Underlying Action because there are no claims alleged in the Underlying Complaint that are potentially covered by the Berkley Policies for various reasons including the following.

16

57.     Pursuant to the Berkley Policies' Insuring Agreement, as modified by endorsement, the Berkley Policies do not provide coverage unless the act or omission complained of was performed "on behalf of the **Named Insured** and/or **Predecessor Firm** for clients of the **Named Insured** and/or **Predecessor Firm."**  The Underlying Complaint does not allege that Todrin was acting on behalf of Todrin Law or Sassoon & Cymrot while acting as a "*de facto* loan originator" in connection with the Deal.

58.     Pursuant to the Berkley Policies' Insuring Agreement, the Berkley Policies do not provide coverage for any conduct that falls outside of the Policy's definition of "Legal Services."

59.     Pursuant to the Berkley Policies' Insuring Agreement, the Berkley Policies do not provide coverage for any damages that fall outside the Policies' definition of "Damages."

60.     The Todrin Law Policy includes a prior acts date of May 25, 2017.  The Todrin Law Policy does not provide coverage to the extent that the acts or omissions complained occurred prior to May 27, 2017.

61.     The Berkley Policies' Intentional Acts (Exclusion A) Exclusion bars coverage for claims "based on, or arising out of, or in any way involving any dishonest, fraudulent, criminal, malicious act or omission or intentional wrongdoing by an **Insured**."  The claims asserted in the Underlying Complaint are based on, arise out of, or involve, intentionally dishonest, fraudulent and / or criminal conduct allegedly on the part of Todrin.

62.     The Berkley Policies' Contractual Liability (Exclusion D) Exclusion bars coverage for any claim "based on, or arising out of, or in any way involving an **Insured's** alleged liability under any oral or written contract or agreement, unless such liability would have attached to any **Insured** in the absence of such agreement."  The Underlying Complaint implicates the existence of numerous contractual relationships.  To the extent that Todrin's

alleged liability is based on, arises out of, or in any way involves, any oral or written contract or agreement, unless such liability would have attached in the absence of such agreement, the Contractual Liability Exclusion would apply to bar coverage.

63.     The Berkley Policies' Capacity as Director, Officer, Fiduciary Exclusion (Exclusion F) bars coverage for any claim "based on, or arising out of, or in any way involving an **Insured's** capacity as . . . a former, existing or prospective officer, director, shareholder, partner, manager or member (or any equivalent position) of any entity if such entity is not named in the Declarations." The Underlying Complaint alleges that Todrin is the President, Treasurer, Secretary, CEO and Director of Second Wind Consultants and also a managing member of Second Wind Capital, LLC and also asserts that Todrin was acting, in part, on behalf of those entities in connection with the Deal.

64.     The Berkley Policies' Owned Entity Exclusion (Exclusion H) excludes any claim "based on, or arising out of, or in any way involving **Legal Services** performed, directly or indirectly, for any entity not named in the Declarations, if at the time of the act or omission giving rise to the **Claim**, the percentage of ownership interest, direct or indirect, in such entity by any **Insured**, or an accumulation of **Insureds**, exceeded 10%." The Underlying Complaint alleges that Todrin is the President, Treasurer, Secretary, CEO and Director of Second Wind Consultants and also a managing member of Second Wind Capital, LLC and also asserts that Todrin was acting, in part, on behalf of those entities in connection with the Deal.

65.     The Berkley Policies' Securities Exclusion (Exclusion J) bars coverage for any claim "based on, or arising out of, or in any way involving" "the promotion, sale or solicitation for sale of securities, real estate, or other investments by any **Insured**" or "recommendations, representations, or opinions concerning specific investment advice by any **Insured** or any person

18

or organization referred to by any **Insured** or any person or organization referred to by any **Insured** in connection with . . . the performance or nonperformance of . . . other investments." All of the claims asserted in the Underlying Complaint are based on, arise out of, or involve, the foregoing excluded conduct, and therefore coverage is barred by the Securities Exclusion.

66.     The Berkley Policies' Funds Exclusion (Exclusion I) excludes any claim "based on, or arising out of, or in any way involving the actual or alleged conversion, misappropriation or improper commingling of client funds."   The Underlying Complaint alleges that Todrin induced MK III to enter into the loan transaction so that Donald Todrin and Second Wind could be repaid using proceeds of the Loan from MK III, and also claims that the Borrowers, through their counsel, periodically made forbearance payments to Todrin, who applied a portion of those payments to legal bills without authorization.

67.     The Berkley Policies' Personal Profit Exclusion (Exclusion K) excludes any claim "based on, or arising out of, or in any way involving any Insured having gained any personal profit or advantage to which he or she was not legally entitled."   The Underlying Complaint alleges that Todrin induced MK III to enter into the loan transaction so that Donald Todrin and Second Wind could be repaid using proceeds of the Loan from MK III, and also claims that the Borrowers, through their counsel, periodically made forbearance payments to Todrin, who applied a portion of those payments to legal bills without authorization.

68.     Given the foregoing, there is an actual and justiciable controversy between Berkley and the Defendants concerning their respective rights and obligations under the Berkley Policies regarding the Underlying Action.

     **ii.**     **Third Party Action**

69.     Berkley asserts that it has no defense or indemnification obligations to Sassoon & Cymrot in connection with the Third Party Action because there are no claims alleged in the Third Party Complaint that are potentially covered by the Sassoon & Cymrot Policy for various reasons including the following.

70.     The Sassoon & Cymrot Policy's **Insured v. Insured** (Exclusion E) Exclusion specifically bars from coverage "any **Claim** by or on behalf of an **Insured** under this Policy against any other **Insured** hereunder; unless such **Claim** arises out of **Legal Service**s by an **Insured** rendered to such other **Insured** as a client."  The Third Party Complaint alleges a claim by one Insured (Todrin) against another Insured (Sassoon & Cymrot) and does not involve the rendering of Legal Services to an Insured as a client.  Consequently, the **Insured v. Insured** exclusion applies to bar coverage with respect to the Third Party Complaint.

71.     Pursuant to the Sassoon & Cymrot Policy's Insuring Agreement, Berkley agreed to pay on behalf of the Insured all sums in excess of the deductible, up to the Limit of Liability, that the Insured "shall become legally obligated to pay as **Damages** and **Claim Expenses** because of a **Claim** . . . by reason of an act or omission in the performance of **Legal Services** by the **Insured** or by any person for whom the Insured is legally liable, while acting on behalf of the **Named Insured** and/or **Predecessor Firm** for clients of the **Named Insured** and/or **Predecessor Firm.**"  The Sassoon & Cymrot Policy further provides that Berkley has "the right and duty to defend, in the **Insured's** name and on the **Insured's** behalf, a **Claim** seeking **Damages** covered by this Policy . . . ."  The Sassoon & Cymrot Policy's definition of **Damages** does not include "injunctive or declaratory relief."  Consequently, because the Sassoon & Cymrot Policy's definition of **Damages** specifically excludes "declaratory relief," Todrin's

claims for declaratory judgment in the Third Party Complaint are barred on these grounds as well.

72.     Given the foregoing, there is an actual and justiciable controversy between Berkley and Sassoon & Cymrot concerning their respective rights and obligations under the Sassoon & Cymrot Policy regarding the Third Party Action.

### iii.     Counterclaim

73.     Berkley asserts that it has no defense or indemnification obligations to Todrin in connection with the Counterclaim because there are no claims alleged in the Counterclaim that are potentially covered by the Todrin Law Policy for various reasons including the following.

74.     Pursuant to the Todrin Law Policy Insuring Agreement, as modified by endorsement, the Todrin Law Policy does not provide coverage unless the act or omission complained of was performed "on behalf of the **Named Insured** and/or **Predecessor Firm** for clients of the **Named Insured** and/or **Predecessor Firm."**  The Counterclaim does not allege that Todrin was acting on behalf of Todrin Law in connection with the Deal.

75.     Pursuant to the Todrin Law Policy Insuring Agreement, the Todrin Law Policy does not provide coverage for any conduct that falls outside of the Policy's definition of "Legal Services."

76.     Pursuant to the Todrin Law Policy Insuring Agreement, the Todrin Law Policy does not provide coverage for any damages that fall outside the Policies' definition of "Damages."

77.     The Todrin Law Policy includes a prior acts date of May 25, 2017.  The Todrin Law Policy does not provide coverage to the extent that the acts or omissions complained of in the Counterclaim occurred prior to May 27, 2017.

21

78.     The Todrin Law Policy's Intentional Acts (Exclusion A) Exclusion bars coverage for claims "based on, or arising out of, or in any way involving any dishonest, fraudulent, criminal, malicious act or omission or intentional wrongdoing by an **Insured**."  To the extent that the claims asserted in the Counterclaim are based on, arise out of, or involve, intentionally dishonest, fraudulent and/or criminal conduct allegedly on the part of Todrin, the Intentional Acts Exclusion would apply to bar coverage.

79.     The Todrin Law Policy's Contractual Liability (Exclusion D) Exclusion bars coverage for any claim "based on, or arising out of, or in any way involving an **Insured's** alleged liability under any oral or written contract or agreement, unless such liability would have attached to any **Insured** in the absence of such agreement."  To the extent that the Counterclaim implicates the potential existence of numerous contractual relationships, the Contractual Liability Exclusion would apply to bar coverage.

80.     The Todrin Law Policy's Capacity as Director, Officer, Fiduciary Exclusion (Exclusion F) bars coverage for any claim "based on, or arising out of, or in any way involving an **Insured's** capacity as . . . a former, existing or prospective officer, director, shareholder, partner, manager or member (or any equivalent position) of any entity if such entity is not named in the Declarations."  The Underlying Complaint alleges that Todrin is the President, Treasurer, Secretary, CEO and Director of Second Wind Consultants and also a managing member of Second Wind Capital, LLC and also asserts that Todrin was acting, in part, on behalf of those entities in connection with the Deal.  To the extent that the Counterclaim is premised on these allegations, the Fiduciary Exclusion would apply to bar coverage.

81.     The Todrin Law Policy's Owned Entity Exclusion (Exclusion H) excludes any claim **"**based on, or arising out of, or in any way involving **Legal Services** performed, directly or

indirectly, for any entity not named in the Declarations, if at the time of the act or omission giving rise to the **Claim**, the percentage of ownership interest, direct or indirect, in such entity by any **Insured**, or an accumulation of **Insureds**, exceeded 10%." The Underlying Complaint alleges that Todrin is the President, Treasurer, Secretary, CEO and Director of Second Wind Consultants and also a managing member of Second Wind Capital, LLC and also asserts that Todrin was acting, in part, on behalf of those entities in connection with the Deal. To the extent that the Counterclaim is premised on these allegations, the Owned Entity Exclusion would apply to bar coverage.

82.     The Todrin Law Policy's Securities Exclusion (Exclusion J) bars coverage for any claim "based on, or arising out of, or in any way involving" "the promotion, sale or solicitation for sale of securities, real estate, or other investments by any **Insured**" or "recommendations, representations, or opinions concerning specific investment advice by any **Insured** or any person or organization referred to by any **Insured** or any person or organization referred to by any **Insured** in connection with . . . the performance or nonperformance of . . . other investments." All of the claims asserted in the Underlying Complaint are based on, arise out of, or involve, the foregoing excluded conduct. To the extent that the Counterclaim is premised on this conduct, coverage is barred by the Securities Exclusion.

83.     The Todrin Law Policy's Funds Exclusion (Exclusion I) excludes any claim "based on, or arising out of, or in any way involving the actual or alleged conversion, misappropriation or improper commingling of client funds." The Underlying Complaint alleges that Todrin induced MK III to enter into the loan transaction so that Donald Todrin and Second Wind could be repaid using proceeds of the Loan from MK III, and also claims that the Borrowers, through their counsel, periodically made forbearance payments to Todrin, who

applied a portion of those payments to legal bills without authorization.  To the extent that the Counterclaim is premised on this conduct, coverage is barred by the Funds Exclusion.

84.     The Todrin Law Policy's Personal Profit Exclusion (Exclusion K) excludes any claim "based on, or arising out of, or in any way involving any Insured having gained any personal profit or advantage to which he or she was not legally entitled."  The Underlying Complaint alleges that Todrin induced MK III to enter into the loan transaction so that Donald Todrin and Second Wind could be repaid using proceeds of the Loan from MK III, and also claims that the Borrowers, through their counsel, periodically made forbearance payments to Todrin, who applied a portion of those payments to legal bills without authorization.  To the extent that the Counterclaim is premised on this conduct, coverage is barred by the Personal Profit Exclusion.

85.     Berkley further asserts that it has no defense or indemnification obligations to Todrin in connection with the Counterclaim because there are no claims alleged in the Counterclaim that are potentially covered by the Sassoon & Cymrot Policy for various reasons including the following.

86.     The Sassoon & Cymrot Policy's **Insured v. Insured** (Exclusion E) Exclusion specifically bars from coverage "any **Claim** by or on behalf of an **Insured** under this Policy against any other **Insured** hereunder; unless such **Claim** arises out of **Legal Service**s by an **Insured** rendered to such other **Insured** as a client."   The Counterclaim alleges a claim by one Insured (Sassoon & Cymrot) against another Insured (Todrin) and does not involve the rendering of Legal Services to an Insured as a client.  Consequently, the **Insured v. Insured** exclusion applies to bar coverage with respect to the Counterclaim.

24

87.     Given the foregoing, there is an actual and justiciable controversy between Berkley and Todrin concerning their respective rights and obligations under the Berkley Policies regarding the Counterclaim.

## COUNT ONE
## Declaration of Coverage - Duty to Defend or Pay Defense Costs Under the Todrin Law Policy

1-87.   Paragraphs 1-87 as alleged above are hereby incorporated and made paragraphs 1-87 of Count One as if more fully set forth herein.

88.     Berkley is entitled to a judicial declaration that, pursuant to the Todrin Law Policy, it has no duty to defend, or reimburse for incurred defense costs, in connection with the Underlying Action and/or the Counterclaim.

## COUNT TWO
## Declaration of Coverage - Duty to Defend or Pay Defense Costs Under the Sassoon & Cymrot Policy

1-87.   Paragraphs 1-87 as alleged above are hereby incorporated and made paragraphs 1-87 of Count Two as if more fully set forth herein.

88.     Berkley is entitled to a judicial declaration that, pursuant to the Sassoon & Cymrot Policy, it has no duty to defend, or reimburse for incurred defense costs, in connection with the Underlying Action and/or the Third Party Action.

## COUNT THREE
## Declaration of Coverage - Duty to Indemnify or Pay Indemnity Costs Under the Todrin Law Policy

1-88.    Paragraphs 1-88 as alleged in Count One above are hereby incorporated and made paragraphs 1-88 of Count Three as if more fully set forth herein.

89.    Berkley is entitled to a judicial declaration that, pursuant to the Todrin Law Policy, it has no duty to indemnify, or reimburse for incurred indemnity costs, in connection with the Underlying Action and/or the Counterclaim.

## COUNT FOUR
## Declaration of Coverage - Duty to Indemnify or Pay Indemnity Costs Under the Sassoon & Cymrot Policy

1-88.    Paragraphs 1-88 as alleged in Count Two above are hereby incorporated and made paragraphs 1-88 of Count Four as if more fully set forth herein.

89.    Berkley is entitled to a judicial declaration that, pursuant to the Sassoon & Cymrot Policy, it has no duty to indemnify, or reimburse for incurred indemnity costs, in connection with the Underlying Acton and/or the Third Party Action.

## PRAYER FOR RELIEF

**WHEREFORE**, Berkley Insurance Company prays for the following relief:

1.    A declaratory judgment that there is no coverage under either of the Berkley Policies for the claims asserted in the Underlying Action.

2.    A declaratory judgment that there is no coverage under the Sassoon & Cymrot Policy for the claims asserted in the Third Party Action.

3.    A declaratory judgment that there is no coverage under either of the Berkley Policies for the claims asserted in the Counterclaim.

4.     A declaratory judgment that, pursuant to the Berkley Policies, Berkley has no duty to defend, or reimburse for incurred defense costs, in connection with the Underlying Action.

5.     A declaratory judgment that, pursuant to the Sassoon & Cymrot Policy, Berkley has no duty to defend, or reimburse for incurred defense costs, in connection with the Third Party Action.

6.     A declaratory judgment that, pursuant to the Berkley Policies, Berkley has no duty to defend, or reimburse for incurred defense costs, in connection with the Counterclaim.

7.     A declaratory judgment that, pursuant to the Berkley Policies, Berkley has no duty to indemnify, or reimburse for incurred indemnity costs, in connection with the Underlying Action.

8.     A declaratory judgment that, pursuant to the Sassoon & Cymrot Policy, Berkley has no duty to indemnify, or reimburse for incurred indemnity costs, in connection with the Third Party Action.

9.     A declaratory judgment that, pursuant to the Berkley Policies, Berkley has no duty to indemnify, or reimburse for incurred indemnity costs, in connection with the Counterclaim.

10.    Such other and further relief at law or in equity as the Court deems just and proper.

A jury trial is requested.

PLAINTIFF,
BERKLEY INSURANCE COMPANY

By:/s/  *Jessica A.R. Hamilton*
Jessica A. R. Hamilton
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299
jhamilton@rc.com
BBO # 686341

Dated: May 26, 2021